EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
GOLDEN LAW
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.J.,<br><br>    Plaintiff,<br><br>  vs.<br><br>UNITED STATES OF AMERICA; [FIRST NAME UNKNOWN] MATTHEWS, in his individual capacity; [FIRST NAME UNKNOWN] SELLERS, in his individual capacity; [FIRST NAME UNKNOWN] VIRGIN, in his individual capacity; [FIRST NAME UNKNOWN] BARTOLA, in her individual capacity; [FIRST NAME UNKNOWN] KUTCHER, in her individual capacity; [FIRST NAME UNKNOWN] BOYD, in his individual capacity,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND JURY DEMAND** |

//

//

*K.J. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 1

**INTRODUCTION**

1.    Plaintiff K.J. served a sentence in the Bureau of Prisons and was housed at Federal Correctional Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," for over a year.

2.    While housed at FCI Dublin, Plaintiff K.J. faced constant sexual harassment, culminating in multiple instances of sexual abuse.

3.    Other staff members at FCI Dublin, all the way up through Bureau of Prisons leadership, were aware of the culture of sexual abuse at FCI Dublin and did nothing to meaningfully respond or otherwise protect the people incarcerated there.

4.    Plaintiff K.J. experiences long-lasting traumatization.

**JURISDICTION AND VENUE**

5.    An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

6.    This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8.    Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff K.J. will list this case on the bi-monthly list that will be submitted to the Court to relate this case to those other cases.

**PARTIES**

9.    Plaintiff K.J. was at all times relevant here incarcerated in FCI Dublin.

10.    Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institution Dublin ("FCI Dublin"). FCI Dublin was a federal female low-security correctional institution.

11.    Defendant [First Name Unknown] Matthews was, at all times relevant hereto, a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

12.    Defendant [First Name Unknown] Sellers was, at all times relevant hereto, a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

13.    Defendant [First Name Unknown] Virgin was, at all times relevant hereto, a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

14.    Defendant [First Name Unknown] Bartola was, at all times relevant hereto, a Correctional Officer at FCI Dublin. She is sued in her individual capacity.

15.    Defendant [First Name Unknown] Kutcher was, at all times relevant hereto, a Correctional Officer at FCI Dublin. She is sued in her individual capacity.

16.    Defendant [First Name Unknown] Boyd was, at all times relevant hereto, a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

17.    While acting and failing to act as alleged herein, Defendant United States had complete custody of and total control over Plaintiff K.J. Plaintiff K.J. was dependent upon Defendant United States for his personal security and necessities.

18.    In performing the acts and/or omissions contained herein, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd acted under color of federal law, and Plaintiff K.J. is informed and believes each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff K.J. Defendant United States knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff K.J. and to his constitutionally and statutorily protected rights. Despite this knowledge, Defendant United States failed to take steps to protect Plaintiff K.J. and to ensure his rights to safety from sexual abuse.

## FACTS

19.    From April 4, 2023, through April 18, 2024, Plaintiff K.J. was incarcerated at FCI Dublin.

20.    During that time, Plaintiff K.J. became intimately familiar with why it was known as "the Rape Club".

*K.J. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 3

21.    Plaintiff K.J. is a transgender man.

22.    He experienced sexual harassment and abuse from guards regularly and saw such abuse happening to others at Dublin.

23.    When Plaintiff K.J. arrived at Dublin, he was not issued gender-appropriate clothing, was not medically evaluated, and did not receive medical care for months, despite arriving with a rash all over his body and experiencing difficulty breathing upon arrival.

24.    He also did not receive his medically prescribed testosterone.

25.    Plaintiff K.J. was in a multi-week quarantine in the C and D units upon arrival to Dublin.

26.    On the first night of the quarantine, officers withheld dinner from several prisoners.

27.    Defendant Matthews told Plaintiff K.J. and his cellmate that he would give them food if they exposed their breasts and vaginas.

28.    Plaintiff K.J. told Defendant Matthews that he did not want to do that, and Defendant Matthews grew angry and threatened that Plaintiff K.J. and his cellmate would continue to be denied food, as well as clothes and shower access, if they did not expose themselves to him.

29.    Feeling that he had no choice, Plaintiff K.J. complied and showed Defendant Matthews his breasts and vagina.

30.    In retaliation for his initial reluctance to obey him, Officer Matthews began writing up Plaintiff K.J. for rules violations that he did not commit or for technical rules violations for which officers usually did not issue discipline.

31.    Defendant Matthews escalated his harassment of Plaintiff K.J.

32.    He would open K.J.'s cell door at night to try to catch K.J. or his roommate naked.

33.    He ordered Plaintiff K.J. to have sex with his roommate for Defendant Matthews' sexual gratification.

34.    In May 2023, Plaintiff K.J. was attacked by four prisoners in his cell.

35.    Prior to this attack, another prisoner threatened to stab Plaintiff K.J. Plaintiff K.J. reported that threat to the Captain, but the Captain took no steps to protect him and instead

called him "scary" in reference to his transgender identity and told Plaintiff K.J. that the facility was short-staffed, implying they were too short-staffed to keep him safe.

36.    The following month, in June 2023, K.J. was placed in solitary confinement in the Special Housing Unit ("SHU").

37.    He was supposed to serve a two-week term, but he was unjustifiably in the SHU for 70 days.

38.    Plaintiff K.J. was also placed in a cell with another transgender prisoner who would attack and verbally abuse him.

39.    Plaintiff K.J. asked Defendant Sellers to be moved to another cell because he was not safe with the other prisoner attacking him.

40.    Rather than protect him, Defendant Sellers told Plaintiff K.J. that he needed to be tough.

41.    Defendant Sellers then disclosed to Plaintiff K.J.'s cellmate that he had requested a transfer, further putting Plaintiff K.J. at risk of harm.

42.    In October 2023, another prisoner sexually assaulted Plaintiff K.J.

43.    Plaintiff K.J. filed a Prison Rape Elimination Act ("PREA") report after this assault.

44.    The report was supposed to be confidential, but the investigator shared the details of the incident with other prisoners, again making Plaintiff K.J. a target for attack from other prisoners.

45.    Two weeks after the PREA report, the prisoner who assaulted Plaintiff K.J. was placed in the same yard as Plaintiff K.J. and sexually assaulted him again.

46.    Also in October 2023, Plaintiff K.J. was again attacked by other prisoners and placed in the SHU, where he remained from then until he was released in April 2024, past his disciplinary sentence.

47.    This time in the SHU was again riddled with deplorable conditions, including moldy cells, non-working toilets, no mattress or bedding, and sexual harassment and abuse.

48.    Plaintiff K.J. was forced to undress to receive clean clothes and wait naked in his cell until Defendant Sellers brought the clothes.

49. Before handing him clothes, Defendant Sellers and other officers would leer at Plaintiff K.J.'s unclothed body.

50. On some occasions, the officers would rub their genitalia near the food port.

51. In order to get a fresh tampon when Plaintiff K.J. was menstruating, Defendant Sellers demanded that Plaintiff K.J. remove his clothing, remove his tampon, and give Defendant Sellers the tampon.

52. Defendant Sellers would then leave K.J. unclothed and without hygiene products until he felt like returning.

53. Defendant Virgin was an HVAC officer who worked in the SHU.

54. He also denied Plaintiff K.J. food or clean clothing unless Plaintiff K.J. masturbated in front of him. Plaintiff K.J. would refuse Defendant Virgin's demands, and another prisoner would acquiesce so that Plaintiff K.J. would receive food.

55. Defendant Virgin watched Plaintiff K.J. in the shower, and groped K.J.'s vagina in the law library, under the guise of pat-down searches.

56. Defendant Bartola performed pat-down searches on Plaintiff K.J. and fondled Plaintiff K.J.'s vagina.

57. During these assaults, she propositioned Plaintiff K.J. for sex, and when Plaintiff K.J. refused, she spread information about his private medical condition to other prisoners.

58. Defendant Bartola also fondled herself while watching Plaintiff K.J. and asked Plaintiff K.J. to pull his pants down and expose his vagina in the SHU recreational cage.

59. Defendant Kutcher also groped Plaintiff K.J.'s vagina during searches.

60. On one occasion, she gouged Plaintiff K.J.'s vagina and caused a painful abrasion.

61. Plaintiff K.J. tried to report this assault while receiving medical care for this injury, but was ignored.

62. He was told that Kutcher would not be allowed to work around him, yet she was allowed to continue to do so.

//

//

*K.J. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 6

63. In December 2023, Officer Sanchez separated Plaintiff K.J. from a different cellmate, and in doing so, handcuffed Plaintiff K.J. and his cellmate and deployed pepper spray when his cellmate resisted.

64. Plaintiff K.J. suffered a severe reaction to the noxious gas due to his asthma.

65. Officers then slammed Plaintiff K.J. against the ground, and his head hit the floor.

66. They tied him to a five-point-restraint chair and ripped his clothing from his body. Plaintiff K.J.'s lungs were irritated long after this incident, and he was not allowed to see a doctor.

67. In January or February 2024, Plaintiff K.J. was attacked by a SHU cellmate for eight minutes before any officers came to help.

68. Once they arrived, they sprayed Plaintiff K.J. and the cellmate with mace.

69. The officers again denied him medical care and kept him in the same clothes that were covered in the chemical agent, which triggered his asthma.

70. In February 2024, Plaintiff K.J. and others in the SHU were being denied clean clothes, clean linens, medical treatment, and access to recreation.

71. Plaintiff K.J. and others in the SHU went on hunger strike in an effort to get the attention of people higher in the BOP and to get help and relief from the treacherous SHU conditions, including sexual abuse.

72. Plaintiff K.J. was on hunger strike for two and a half to three weeks, but no one from the BOP ever came.

73. During the hunger strike, Plaintiff K.J. attempted suicide by hanging.

74. Then-Acting Warden Art Dulgov found Plaintiff K.J. hanging and in and out of consciousness.

75. He did not enter the cell to render aid.

76. Instead, he instructed Plaintiff K.J.'s roommate to untie the noose and get Plaintiff K.J. down.

77. Acting Warden Dulgov did not summon medical attention for Plaintiff K.J.

78. After this incident, Defendant Boyd removed Plaintiff K.J. from his cell in the middle of the night, claiming he had a medical appointment.

79. Instead, he took Plaintiff K.J. to suicide watch.

80. On the way to suicide watch, Defendant Boyd took K.J. to an area without cameras and brushed his erect penis against K.J.'s buttocks several times, all while making derogatory comments.

81. Plaintiff K.J. felt scared because he was being transported at night, and he feared that Defendant Boyd would rape him.

82. During his week on suicide watch, Plaintiff K.J.'s clothes were taken, and he was only provided a garment that did not close all the way.

83. Plaintiff K.J. was watched almost exclusively by male corrections officers who were able to leer at his exposed body.

84. Finally, on April 9, 2024, Plaintiff K.J. was processed and told he was going home.

85. Defendant Bartola then subjected Plaintiff K.J. to a strip search, forcing him to bend over and spread his buttocks, and asking him to put his own finger in his anus.

86. Plaintiff K.J. was still not released on that day.

87. Upon return to his cell, Defendants Boyd and Bartola told him that he would not be released due to his cooperation with Special Master Wendy Still regarding conditions and sexual abuse at Dublin.

88. Plaintiff K.J. also witnessed Acting Warden Dulgov and Lt. Sanchez demand sexual gratification from prisoners before providing basic necessities.

89. Plaintiff K.J. regularly saw how other prisoners would face retaliation for reporting sexual abuse or harassment, including loss of privileges, prolonged confinement in the SHU, or loss of good-time credit resulting in a longer BOP sentence.

90. He continued having to interact with Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd, and was terrified every time.

91. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd's conduct towards Plaintiff K.J. and others was overt and obvious.

//

//

92. Plaintiff K.J. lived in fear of Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd and experienced great anxiety, fear, shame, and embarrassment over what they did to him.

93. He never felt safe at FCI Dublin.

94. He has been able to see a therapist who has provided him with some help, but he is still navigating the anxiety, fear, shame, and embarrassment.

95. Plaintiff K.J. was in BOP custody until May 30, 2024.

**EXHAUSTION**

96. On July 15, 2024, Plaintiff K.J., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

97. The BOP acknowledged receipt on July 16, 2024.

98. The BOP has not substantively responded to his claim.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.4)**

99. Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

100. Plaintiff K.J. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employees, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd.

101. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

102. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

103. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

*K.J. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 9

104. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

105. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd discriminated against Plaintiff K.J. based on his gender when they repeatedly sexually abused him by physically subjecting him to sexual acts.

106. By these acts, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd caused Plaintiff K.J. physical, mental, and emotional injuries as well as injury to his personal dignity.

**SECOND CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd)**
**(Cal. Civ. Code § 52.4)**

107. Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

108. Plaintiff K.J. brings this claim for gender violence under California Civil Code § 52.4 against Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd.

109. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

110. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

111. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

112. Plaintiff has a nonfrivolous argument that Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

113. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd discriminated against Plaintiff K.J. based on his gender when they repeatedly sexually abused him by physically subjecting him to sexual acts.

114.    By these acts, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd caused Plaintiff K.J. physical, mental, and emotional injuries as well as injury to his personal dignity.

### THIRD CLAIM FOR RELIEF
### SEXUAL ASSAULT
### (against Defendant United States)
### (FTCA; California Common Law)

115.    Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

116.    Plaintiff K.J. brings this claim for sexual assault under the Federal Tort Claims Act for violation of California common law against the United States based on the conduct of its employees, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd.

117.    These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

118.    Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

119.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd violated Plaintiff K.J.'s right to be free from sexual assault by repeatedly sexually abusing him while he was incarcerated.

120.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd's sexual abuse of Plaintiff K.J. was deeply offensive to his personal dignity and would offend a person of ordinary sensitivity.

121.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd subjected Plaintiff K.J. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff K.J.'s person.

122.    By intentionally subjecting Plaintiff K.J. to sexual acts, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

123. By repeatedly subjecting Plaintiff K.J. to sexual acts, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd caused him to suffer physical, mental, and emotional injuries, as well as injuries to his personal dignity.

### FOURTH CLAIM FOR RELIEF
### SEXUAL ASSAULT
### (against Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd)
### (California Common Law)

124. Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

125. Plaintiff K.J. brings this claim for sexual assault for violation of his rights under California common law against Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd.

126. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd violated Plaintiff K.J.'s right to be free from sexual assault by repeatedly sexually abusing him while he was incarcerated.

127. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd's sexual abuse of Plaintiff K.J. was deeply offensive to his personal dignity and would offend a person of ordinary sensitivity.

128. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd subjected Plaintiff K.J. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff K.J.'s person.

129. Plaintiff has a nonfrivolous argument that Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

130. By intentionally subjecting Plaintiff K.J. to sexual acts, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

131. By repeatedly subjecting Plaintiff K.J. to sexual acts, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd caused him to suffer physical, mental, and emotional injuries, as well as injuries to his personal dignity.

## FIFTH CLAIM FOR RELIEF
### SEXUAL BATTERY
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 1708.5)**

132. Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

133. Plaintiff K.J. brings this claim for sexual battery under the Federal Tort Claims Act based on California Civil Code § 1708.5 against the United States for the conduct of its employees, Defendants Virgin, Bartola, Kutcher, and Boyd.

134. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

135. Their position as correctional officers was essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

136. Defendants Virgin, Bartola, Kutcher, and Boyd committed sexual battery against Plaintiff K.J. by repeatedly sexually abusing him while he was incarcerated as a minimum-security prisoner at FCI Dublin.

137. The sexual abuse of Plaintiff K.J., a prisoner, was deeply offensive to his personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

138. Defendants Virgin, Bartola, Kutcher, and Boyd subjected Plaintiff K.J. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff K.J.'s person.

## SIXTH CLAIM FOR RELIEF
### SEXUAL BATTERY
**(against Defendants Virgin, Bartola, Kutcher, and Boyd)**
**(Cal. Civ. Code § 1708.5)**

139. Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

140. Plaintiff K.J. brings this claim for sexual battery under California Civil Code § 1708.5 against Defendants Virgin, Bartola, Kutcher, and Boyd.

141.    Defendants Virgin, Bartola, Kutcher, and Boyd committed battery against Plaintiff K.J. by repeatedly sexually abusing him while he was incarcerated as a minimum-security prisoner at FCI Dublin.

142.    Plaintiff K.J. has a nonfrivolous argument that Defendants Virgin, Bartola, Kutcher, and Boyd bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

143.    The sexual abuse of Plaintiff K.J., a prisoner, was deeply offensive to his personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

144.    Defendants Virgin, Bartola, Kutcher, and Boyd subjected Plaintiff K.J. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff K.J.'s person.

**SEVENTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant United States)**
**(FTCA; California Common Law)**

145.    Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

146.    Plaintiff K.J. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of its employees, Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd.

147.    These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

148.    Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

149.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd engaged in outrageous conduct by repeatedly subjecting Plaintiff K.J. to sexual acts while he was incarcerated as a prisoner in their employer's custody. They abused their authority over Plaintiff K.J. and their power to affect him in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

150. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd's sexual abuse caused Plaintiff K.J. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

151. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd intended to cause Plaintiff K.J. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse of a prisoner.

## EIGHTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(against Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd)**
**(California Common Law)**

152. Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

153. Plaintiff K.J. brings this claim for the intentional infliction of emotional distress against Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd.

154. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd engaged in outrageous conduct by repeatedly subjecting Plaintiff K.J. to sexual acts while he was incarcerated as a prisoner in their employer's custody. They abused their authority over Plaintiff K.J. and their power to affect him in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

155. Plaintiff K.J. has a nonfrivolous argument that Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

156. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd's sexual abuse caused Plaintiff K.J. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

157. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd intended to cause Plaintiff K.J. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse of a prisoner.

## NINTH CLAIM FOR RELIEF
### BANE ACT
### (against all Defendants)
### (FTCA; Cal. Civ. Code § 52.1)

158. Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

159. Plaintiff K.J. was in the custody and control of the United States during all relevant times.

160. Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd violated Plaintiff K.J.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; his rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; his right under the First Amendment to be free from retaliation for engaging in protected conduct such as reporting sexual abuse; and his right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

161. Plaintiff K.J. has a nonfrivolous argument that Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

162. Defendant United States, by the actions of its employees Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd, interfered with Plaintiff K.J.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; his rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; his right under the First Amendment to be free from retaliation for engaging in protected conduct such as reporting sexual

abuse; and his right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

163.    As a proximate result of these acts, Plaintiff K.J. sustained damage and injury.

## TENTH CLAIM FOR RELIEF
### TRAFFICKING VICTIMS PROTECTION ACT
### (against all Defendants)
### (18 U.S.C. § 1581, *et seq.*)

164.    Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

165.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd knowingly recruited, enticed, and solicited Plaintiff K.J. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

166.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd made Plaintiff K.J. engage in sex acts through force and coercion.

167.    Plaintiff K.J. has a nonfrivolous argument that Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

168.    Defendant United States knew of, or should have reasonably known, that Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd were soliciting Plaintiff K.J. in exchange for sex acts, and benefited by failing to protect Plaintiff K.J.

169.    This conduct has caused Plaintiff K.J. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and he has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

## ELEVENTH CLAIM FOR RELIEF
### CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.5)

170.    Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

*K.J. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 17

171.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd knowingly recruited, enticed, and solicited Plaintiff K.J. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

172.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd made Plaintiff K.J. engage in sex acts through force and coercion.

173.    Defendant United States knew or should have known that Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd were engaged in these activities and intentionally placed Plaintiff K.J. at greater risk of harm and/or failed to act in a manner that protected Plaintiff K.J. from harm.

174.    Defendant United States employed Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

175.    This conduct has caused Plaintiff K.J. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**TWELFTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd)**
**(Cal. Civ. Code § 52.5)**

176.    Plaintiff K.J. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

177.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd knowingly recruited, enticed, and solicited Plaintiff K.J. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

178.    Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd made Plaintiff K.J. engage in sex acts through force and coercion.

179.    Plaintiff K.J. has a nonfrivolous argument that Defendants Matthews, Sellers, Virgin, Bartola, Kutcher, and Boyd bear individual liability and are not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

180.   This conduct has caused Plaintiff K.J. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**PRAYER FOR RELIEF**

181.   Plaintiff K.J. prays for judgment against Defendant, and each of them, as follows:

(a)   An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff K.J. in an amount to be determined at trial;

(b)   An award to Plaintiff K.J. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

(c)   For such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff K.J. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: February 27, 2026

SIEGEL, YEE, BRUNNER & MEHTA

By:_____
EmilyRose Johns


GOLDEN LAW


By: /s/ Deborah M. Golden
Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming


*Attorneys for Plaintiff*

*K.J. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 19